IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>             Plaintiff,              )<br>                                            )<br> v.                                       )       CASE NO: 1:23-cr-00116-JDB<br>                                            )<br> NDUBUISI OKAFOR, MD     )<br>             Defendant.            )  | |

# DR. OKAFOR'S MOTION TO DISMISS WITH
# MEMORANDUM OF POINTS AND AUTHORITIES

COMES NOW, defendant NDUBUISI OKAFOR, MD by and through, John O. Iweanoge II and THE IWEANOGES FIRM, PC and moves this Honorable Court pursuant to Federal Rule of Criminal Procedure 12(b) and the Due Process Clause of the Fifth Amendment, for an order dismissing the indictment against him because it improperly declares illegitimate a medical standard of care not delineated as such by District of Columbia law and because 21 U.S.C. §841 is unconstitutionally vague as applied to him.

## INTRODUCTION

The superseding indictment, filed April 11, 2024, charges Dr. Okafor with one count of conspiracy and twenty-nine counts substantive counts to unlawfully distribute controlled substances outside the usual course of medical practice and without a legitimate medical purpose, distributing controlled substances outside the usual course of medical practice and without a legitimate medical purpose, and one count of maintaining a drug involved premises.

1

All of these counts hinge on whether Dr. Okafor acted outside of the usual medical practice and without a legitimate medical purpose.[1]

During the dates in the indictment, Dr. Okafor's practice focused on treating various patient's including chronic pain patients. He is a medical doctor who is licensed to practice medicine in the District of Columbia and with his offices located in the District of Columbia.

Dr. Okafor was registered with the Drug Enforcement Administration to dispense, administer, and prescribe controlled substances during the time at issue in the indictment.

## ARGUMENT

**I.     The statute is void for vagueness as applied and violates due process.**

   A.     Vague statutes are unconstitutional.

The Constitution's guarantee of due process prohibits laws so vague that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926)).

Vague laws offend due process in two ways. First, they fail to provide the persons targeted by the statute with a reasonable opportunity to know what is prohibited, so that they may act accordingly. Second, by failing to provide explicit standards by which to assess conduct, vague laws impermissibly delegate basic policy matters for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory enforcement."   In other words, by failing to define explicitly what conduct is proscribed, vague laws invite arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 170 (1972).

"[T]he degree of vagueness that the Constitution tolerates...depends in part on the nature of

the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498 (1982). Statutes that impose criminal penalties are subjected to a higher standard of certainty in their language than is applicable to other statutes. *See, e.g., Kolender,* 461 U.S. at 357; and *Goguen,* 415 U.S. at 574-75.

      B.    <u>A statute deemed to be unconstitutionally vague as applied is void.</u>

Even if a statute is not void for vagueness on its face, it can still be found void for vagueness if the charged conduct falls outside the scope of the statute's stated prohibitions. This is generally denominated as the void for vagueness as applied doctrine. Facial-vagueness and vagueness-as-applied claims are not the same thing. Facial-vagueness claims are concerned only with the language of a statute standing alone, and not with any particular application of the statute. In contrast, vagueness-as-applied claims ask (1) whether the language of a statute gives adequate notice that it covers the conduct at issue (in this case "usual course of professional practice" "legitimate medical purpose") and/or (2) whether the statute was applied in such a way to guard against arbitrary enforcement, in this case the interpretation by federal agents with no medical training of whether a particular medical practice falls within the usual course of professional practice. *See United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993).

An "as applied" void-for-vagueness challenge has two elements: fair notice and enforcement standards.

> A statute is impermissibly vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Additionally, a statute that authorizes or encourages arbitrary and discriminatory enforcement can be impermissibly vague.

*United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) (internal citations and quotations omitted). The *Locklear* case provides a vivid example of the underlying doctrine. As the Supreme Court has explained, "there are statutes that by their terms or as authoritatively construed apply

3

without question to certain activities, but whose application to other behavior is uncertain." *Goguen*, 415 U.S. at 577-578.

> Regarding fair notice, [o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.
>
> * * *
>
> Regarding the adequacy of enforcement standards, [d]ue process requires that legislation state reasonably clear guidelines for law enforcement officials, juries, and courts to follow in discharging their responsibility of identifying and evaluating allegedly illegal conduct.

*United States v. LaHue,* 261 F.3d 993, 1006 (10th Cir. 2001) (internal citations quotations and footnotes omitted).

    C.    <u>The Controlled Substances Act as applied in this case is unconstitutionally vague.</u>

The first question presented as to vagueness as applied in this case is whether there are standards which give a medical doctor adequate notice that the Controlled Substances Act prohibited Dr. Okafor from practicing medicine in the manner in which he did.

The Controlled Substances Act prohibits a person from dispensing or distributing a controlled substance. 21 U.S.C. § 841(a)(1). But a physician is exempt from this prohibition as long as he is registered and acting as authorized. 21 U.S.C. §§ 802(21), 822(b). For a controlled substance prescription to be effective, the prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

In *Gonzales v. Oregon,* the Supreme Court stated, "[a]ll would agree, we should think, that the statutory phrase 'legitimate medical purpose' is a generality, susceptible to more precise definition and open to varying constructions, and thus ambiguous in the relevant sense." 546 U.S. 243, 258 (2006). Yet, this is the standard the government is using to prosecute Dr. Okafor.

Here the government has been given complete discretion to determine what constitutes a "usual course of professional practice" and a "legitimate medical purpose." As the *Gonzales* Court noted, the federal government has only set standards in one area for physicians under the CSA: the

4

treatment of narcotic addicts. 546 U.S. at 271. The *Gonzales* Court recognized that the federal government could choose to legislate physicians more under the CSA but had chosen not to do so except in the area of narcotics addiction. *Id.*

Notably, Dr. Okafor has a medical license and has practiced medicine for many years; conversely, the agents interpreting "usual course of medical practice" and "legitimate medical purpose" have never practiced medicine. While the Supreme Court may have upheld the conviction under the Controlled Substances Act in *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335 (1975). However, the facts here do not align with those in *Moore*.

*Gonzales v. Oregon* further clarified that *Moore* was a specific instance. *Moore* does not stand for the principle that the Government and the DEA can interpret what constitutes "professional practice." *Gonzales* cited *Moore* for the premise that in enacting the addiction-treatment provisions, Congress sought to change the fact that the criminal prosecutions in the past had turned on the opinions of federal prosecutors. *Gonzales*, 546 U.S. at 266. *Gonzales* did not cite *Moore* for the broad sweeping notion that the DEA can interpret "professional practice" as it sees fit. In fact, *Gonzales* held the opposite. In *Moore* there were specific standards the defendant could follow.

In this case, there were no federal regulations for treating chronic pain patients under which to evaluate Dr. Okafor's medical decisions. The CSA, as applied to Dr. Okafor as a physician, is unconstitutionally vague. Therefore, the indictment should be dismissed.

II. **The indictment improperly illegitimatizes a medical standard for patient treatment that is within the contours of District of Columbia law.**

An indictment is deemed constitutionally sufficient if it contains the essential elements of the offense intended to be charged; sufficiently apprises the accused of what he must be prepared to defend against; and enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense. *U.S. v. Taff,* 400 F.Supp.2d 1270, 1271

5

(D.Kan. 2005). The indictment in this case does none of these things. An indictment may be dismissed under Rule 12(b) of the Federal Rules of Criminal Procedure when, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. *See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010). Such is the case here.

The *Gonzales* court upheld Oregon's right to establish physician-assisted suicide. The Attorney General "is not authorized to make a rule declaring illegitimate a medical standard for care and treatment of patients that is specifically authorized under state law." *Gonzales*, 546 U.S. at 258. Just as the Attorney General was prohibited from criminalizing actions taken by physicians under Oregon law, the government should not be able to criminalize actions permitted under District of Columbia law for the treatment of pain patients. *See United States v. Greenfield*, 554 F.2d 179, 183 (5th Cir. 1977)("If the government agent through lies and deception convinces a physician that a legitimate medical need exists for the drugs, the physician is simply not guilty of a crime.")

A review of the statutes shows that there are set standards delineating how physicians in the District of Columbia may treat pain patients. Under *Gonzales*, federal agents and the government cannot preempt their law and arbitrarily decide what constitutes a "legitimate medical purpose." There is not one correct way to treat pain. The fact that Dr. Okafor followed a different therapeutic modality than the government's expert, or how an unqualified DEA agent interpreted the "usual course of professional conduct", does not render Dr. Okafor's choice of how to treat pain patients outside the usual course of professional conduct.

The allegations that Dr. Okafor's pain management practice was not for a legitimate medical purpose is comparable to the Government's position that physician-assisted suicide was not for a legitimate medical purpose contrary to Oregon's statute. The government does not have the power to make the determination and legislate what treatment of pain patients is not for a legitimate medical purpose when there is more than one way to treat pain.

The indictment unlawfully and arbitrarily sets a federal standard declaring illegitimate a medical standard for patient care and treatment that is specifically authorized under the law, and it should be dismissed.

### III   THE INDICTMENT FAILS TO STATE THE ELEMENTS REQUIRED TO ESTABLISH THE DEFENDANT'S GUILT FOLLOWING *RUAN* AND *KAHN II*.

Proceeding to trial on the instant indictment would violate Dr. Okafor's Fifth and Sixth Amendment right to be tried only upon indictment by a Grand Jury. *Russell v. United States*, 369 U.S. 749 (1962). At a minimum an indictment must set forth all the elements of the offense. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). The indictment, in this case, did not do so.

Under *Ruan* the government must prove that the defendant (1) issued a prescription that was outside of his "authorization" as a registered practitioner under the CSA and (2) *knew* that the charged prescription was not authorized. *United States v. Kahn*, 58 F.4th 1308, 1314 (10th Cir. 2023) ("*Kahn II*") (finding that following *Ruan* the government must prove that the "defendant knew or intended that his or her conduct was unauthorized."); *Ruan v. United States*, 142 S. Ct. 2370, 2379 (2022) (same).

The indictment relied on the language from 21 CFR §1306.04. Following *Ruan*, the language "usual course of professional practice" and "legitimate medical purpose" articulated in CFR §1306.04 are not substitutes for "authorization." *Kahn II* explicitly held that that even a knowing violation of that standard does not, by itself, establish the crime. *Kahn II*, 58 F.4th at 1315 (finding the jury instructions erroneous because "[t]he jury was repeatedly instructed that it could convict Dr. Kahn if it concluded that he acted outside the usual course of professional medical practice or without a legitimate medical purpose."). This "ambiguous" regulation "susceptible to more precise definition and open to varying constructions," *Ruan,* 142 S. Ct. at 2377–78 (*quoting Gonzales v. Oregon*, 546 U.S. 243, 258 (2006)), does not define "authorization" under the CSA.

7

Even if deviation from the standard articulated in CFR §1306.04 were sufficient to meet the relevant *actus reus* requirements, the government must still prove that the defendant knew that his conduct was unauthorized. The indictment does not even begin to allege that Dr. Okafor knew that the prescriptions he issued were outside the scope of his authorization under the CSA.

At least arguably, 18 U.S.C. §885, does not require the government to establish a lack of authorization in an indictment under §841. However, the indictment in this case itself establishes the defendant's burden of production under § 885. Therefore it was incumbent on the government to meet the burden of proof. It was the manifest purpose and intent of the drafters of the CSA that §841 simply does not apply to a person who has received a DEA license to issue controlled substances.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87 (1974) (citing *Hagner v. United States,* 285 U.S. 427 (1932); *United States v. Debrow,* 346 U.S. 374 (1953)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling,* 418 U.S. at 117 (citing *United States v. Carll,* 105 U.S. 611 (1882)).

The indictment in Dr. Okafor's case provides a recitation of cursory information. The indictment does not track the language of the statute. Section 841 reads:

> "*Except as authorized* by this subchapter, it shall be unlawful for any person knowingly or intentionally… to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

21 U.S.C.A. § 841 (emphasis added). Under *Ruan* the "knowing or intentional" *mens rea* applies to the "except as authorized" clause of §841. *Ruan*, 142 S. Ct. at 2382. Therefore, not only must the

8

government establish that the defendant's conduct was unauthorized, but that the defendant knew it to be unauthorized. As argued below this requires something close to specific intent.

The indictment in this case does not track the language of the statute. It does not include an allegation that either (1) that the charged prescriptions were unauthorized or (2) that the defendant knew the charged prescriptions were unauthorized.

A. **The CFR does not determine the criteria for determining whether a prescription is "authorized" under §841 of the CSA.**

*Kahn II* explicitly holds that the CFR does not determine the standard of authorization as that term is used in §841. *Kahn II,* 58 F.4th at 1316. The Tenth Circuit found that the instructions were erroneous because they systematically articulated the incorrect standard.

> "First, *Ruan* expressly disallows conviction under §841(a)(1) for behavior that is only objectively unauthorized. The government must prove that a defendant 'knowingly or intentionally acted in an unauthorized manner.' *Ruan*, 142 S. Ct. at 2376.
> Second, *Ruan* treats the two criteria in §1306.04(a) not as distinct bases to support a conviction, but as 'reference to objective criteria' that may serve as circumstantial evidence of a defendant's subjective intent to act in an unauthorized manner."

*Id.* *Ruan* was very clear as to the *mens rea* required.

> "As we have said before, 'the more unreasonable' a defendant's 'asserted beliefs or misunderstandings are,' especially as measured against objective criteria, 'the more likely the jury ... will find that the Government has carried its burden of proving knowledge.' *Cheek v. United States*, 498 U.S. 192, 203–204 (1991). But the Government must still carry this burden. *And for purposes of a criminal conviction under § 841, this requires proving that a defendant knew or intended that his or her conduct was unauthorized.*"

*Ruan,* 142 S. Ct. at 2382 (emphasis added).

    1. **CSA does not grant the attorney general authority to define what constitutes an "effective prescription"**

Beyond the text of *Ruan* there is a greater problem with conditioning authorization on compliance with the language of CFR §1306.04(a). Congress simply did not grant the attorney general

9

the authority to define what constitutes an effective prescription, or the criteria by authorization should be determined.

The Controlled Substances Act ("CSA") is an omnibus Act creating "a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules." *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006); 21 U.S.C. §801 et seq. It outlines a system identifying five schedules and detailing policies and procedures for categorizing substances within one of those schedules. 21 U.S.C.A. § 812. The Attorney General, in coordination with the Secretary of Health and Human Services, is charged with two basic functions. First, the Attorney General is given the authority to review new medications and place them on a temporary and permanent basis in one of the five schedules. 21 U.S.C.A. §811. Second, the Attorney General is charged with registering medical practitioners to issue controlled substances. 21 U.S.C.A. §823. Defining what constitutes authorization under §841 simply does not fall within the ambit of either function. The Attorney General also has the authority to revoke a medical practitioner's CSA registration, pursuant to specifically outlined procedures. 21 U.S.C.A. §824. Doing so would indeed render any subsequently issued prescriptions unauthorized, but no revocation occurred in this case prior to the issuance of any of the charged prescriptions. Importantly, in these areas, the CSA provides explicit and detailed procedures and criteria that the attorney general should use in exercising its rule-making authority.

21 U.S.C.A. §821 states:

> "The Attorney General is authorized to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed chemicals.

The word "control" is explicitly defined by the CSA. It does not include the power to generally regulate the practice of medicine or to further define what constitutes an authorized prescription. 21 U.S.C.A. §802 ("The term "control" means to add a drug or other substance, or immediate precursor,

to a schedule under part B of this subchapter, whether by transfer from another schedule or otherwise.").

The CSA does not include any explicit grant of authority allowing the attorney general to define what constitutes an "authorized" prescription under §841 or to articulate the criteria against which "authorization" should be measured. *Gonzalez* could not have been clearer on that point. *Gonzales*, 546 U.S. at 269–70.

B. A Knowing Violation Of The Standard Articulated In CFR §1306.04 Does Not Establish That The Defendant Knew The Charged Prescriptions To Be Unauthorized.

Even if CFR §1306.04 could be considered the relevant criteria for determining objective "authorization," the government must still prove that the defendant knew that issuing a prescription in deviation from that standard was not authorized by his DEA registration. *Ruan* is clear that the government must prove "that a defendant knew or intended that his or her conduct was unauthorized." *Ruan,* 142 S. Ct. at 2378. In arriving at that standard, the Court referenced the logic and holding of *Cheek. Cheek* is a tax case that reiterated the requirement that a defendant cannot be convicted of tax evasion unless the government proves they knew that the failure to pay taxes actually violated the tax code. *Cheek v. United States*, 498 U.S. 192, 203–204 (1991).

Further, *Ruan* explicitly drew the parallel between the petitioners' case and *Liparota*:

> "In *Liparota*, we interpreted a statute penalizing anyone who 'knowingly uses [food stamps] in any manner not authorized by' statute…. We held that 'knowingly' modified both the 'use' of food stamps element and the element that the use be 'not authorized.' ... We applied 'knowingly' to the authorization language even though Congress had not 'explicitly and unambiguously' indicated that it should so apply. ... But if knowingly did not modify the fact of nonauthorization, we explained, the statute 'would ... criminalize a broad range of apparently innocent conduct.'"

*Ruan,* 142 S. Ct. at 2378. *Liparota* involved the standard necessary to convict a defendant under 7 U.S.C. §2024(b)(1) for unauthorized use of food stamps. *Liparota v. United States*, 471 U.S. 419, 430 (1985). The Supreme Court held that in order to obtain a conviction under §2024(b)(1) the government

must prove "that petitioner knew that his conduct was unauthorized or illegal." *Id*. 434. The defendant in *Liparota* did purchase food stamps at below the market rate from an undercover government agent. *Id.* 421-22. Furthermore, the defendant *knew* he was purchasing food stamps below the market rate. *Id*. The Supreme Court found that this was not enough to establish guilt. The Supreme Court found that knowingly engaging in conduct that is, in fact, unauthorized is not sufficient. (Even if one is aware of all the factors that render it unauthorized). Instead, the government must also prove that the defendant actually knew his conduct to be unauthorized. *Id*. 433-34.

*Ruan* articulates a standard of *mens rea* that is at least very close to specific intent. Even if one assumes that CFR §1306.04 is the governing standard, and that it prohibits a doctor from issuing a prescription that he knows other medical professionals would not consider to be medical care, that, by itself is not enough to establish guilt. Again, under *Kahn II*, even intentionally issuing a prescription that one knows serves no legitimate medical purpose is not sufficient. *Kahn II*, 58 F.4th at 1316. The indictment in this case does not allege that the defendant knew he was acting outside the scope of his authorization as a person registered to distribute controlled substances.

An indictment is generally sufficient if it tracks the language of the statute. In this case, the indictment did not track the language of the statute. Instead, it tracks the language of a CFR that Congress did not grant the executive the power to issue. To be sure, "the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the Government has carried its burden of proving knowledge. *But the Government must still carry this burden. And for purposes of a criminal conviction under § 841, this requires proving that a defendant knew or intended that his or her conduct was unauthorized*." *Ruan*, 142 S.Ct. at 2382 (emphasis added).

Where Congress chose to criminalize the actions of registrants it did so. It did so explicitly and it wrote specific penalty provisions for each. It could have written more. It did not do so. On its face,

the CSA itself does not impose any limitation on the manner in which, or the purpose for which, a prescription may be issued. This was not an accident.

Congress is not always known for its restraint, but where Congress decides that federal authorities have no business in a particular area or decide that their previous attempts at regulating in an area have been unsuccessful, it seems particularly inappropriate for the courts to step in and say they were wrong to exercise restraint.

One cannot both (1) have a DEA registration (which the government agrees was active and valid) and (2) be guilty of issuing an unauthorized prescription that was authorized by that registration.

WHEREFORE, Dr. Okafor respectfully moves this Honorable Court to dismiss the indictment against him.

Respectfully submitted,
**THE IWEANOGES FIRM, P.C.**

By: _/s/JohnOIweanogeII/s/_
John O. Iweanoge, II, Esquire
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, DC 20017
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: joi@iweanogesfirm.com
Attorneys for Defendant

### CERTIFICATE OF SERVICE

I do hereby certify that on the 17th day of June 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing and a copy of the filing to all counsel of record.

_/s/JohnOIweanogeII/s/_
John O. Iweanoge, II, Esquire
