UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on June 14, 2024

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 23-CR-116 (JDB) |
| v. | VIOLATIONS: |
| NDUBUISI JOSEPH OKAFOR, M.D., | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| Defendant. | (Unlawful Distribution of Controlled Substances) |
| | 21 U.S.C. § 846 |
| | (Conspiracy to Unlawfully Distribute Controlled Substances) |
| | 21 U.S.C. § 856(a)(1) |
| | (Maintaining a Drug Involved Premises) |
| | 18 U.S.C. § 2 |
| | (Aiding and Abetting) |
| | FORFEITURE: |
| | 21 U.S.C. § 853(a) and (p); 28 U.S.C. § 2461(c) |

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

1. At all times relevant to the Indictment, **NDUBUISI JOSEPH OKAFOR, M.D.** (**"OKAFOR"**), an internal medicine physician, was licensed by the District of Columbia Board of Medicine, under license number MD19779, to practice medicine in the District of Columbia.

2. **OKAFOR** owned and operated Okafor Medical Associates PLLC (hereinafter "Okafor Medical Associates"), located at 7603 Georgia Avenue Northwest, Washington, D.C. 20012, within the District of Columbia.

3. As part of his practice, **OKAFOR** prescribed controlled substances, including

highly addictive opioids, under his U.S. Drug Enforcement Administration ("DEA") registration number FO4353188.

4.      Individually, and through Okafor Medical Associates, **OKAFOR** routinely prescribed mixtures and substances containing a detectable amount of controlled substances to his patients and other individuals, outside the usual course of professional practice and not for a legitimate medical purpose.

## BACKGROUND ON CONTROLLED SUBSTANCES

5.      The Controlled Substances Act ("CSA"), codified at Title 21, United States Code, Section 801, *et. seq.*, governed the manufacture, distribution, and dispensation of controlled substances in the United States. The CSA and the Code of Federal Regulations ("CFR") contained definitions relevant to this Indictment, some of which are set forth below.

6.      The term "controlled substance" meant a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV and V, as designated by Title 21, United States Code, Section 802(c)(6), and the CFR.

7.      The designation "Schedule II" meant the drug or other substance had a high potential for abuse; the drug had a currently accepted medical use with severe restrictions; and abuse of the drug or other substance may have led to severe psychological or physical dependence.

   a.   Oxycodone was classified as a Schedule II controlled substance, pursuant to 21 C.F.R. § 1308.12(b)(l)(xiv). Oxycodone, sometimes prescribed under brand names including Percocet, was used to treat severe pain. Oxycodone, as with other opioids, was highly addictive.

8.      Except in limited circumstances, Schedule II controlled substances could not be dispensed without a written prescription. *See* 21 U.S.C. § 829. In addition, "[t]he refilling of a

prescription for a controlled substance listed in Schedule II [was] prohibited." *See* 21 C.F.R. § 1306.12(a); 21 U.S.C. § 829(a).

9. The designation "Schedule V" meant the drug or other substance had a lower potential for abuse than Schedules I-IV and consisted of preparations containing limited quantities of certain narcotics. Schedule V drugs were generally used for antidiarrheal, antitussive, and analgesic purposes.

   a. Promethazine with Codeine Oral solution, sometimes prescribed under brand names including Phenergan with Codeine and Pentazine with Codeine, was classified as a Schedule V controlled substance.

10. The term "practitioner" meant a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which she or he practiced, to dispense a controlled substance in the course of business. *See* 21 U.S.C. § 802(21).

11. The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance. The term "distribute" meant to deliver (other than by administering or dispensing) a controlled substance.

12. Upon application by the practitioner, the DEA assigned a unique registration number to each qualifying medical practitioner, including physicians and nurse practitioners, to dispense Schedule II, III, IV, and V controlled substances. To issue a prescription for a controlled substance, an authorized practitioner must have had a DEA registration number for each location, and for each state where the practitioner was prescribing controlled substances.

13. Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. *See* 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03.

14. Under the CSA and CFR, a prescription for a controlled substance was unlawful unless issued for a legitimate medical purpose by a registered practitioner acting in the usual course of professional practice. "The responsibility for the proper prescribing and dispensing of controlled substances is upon the practicing prescriber ...." 21 C.F.R. § 1306.04. "An order purporting to be a prescription issued not in the usual course of professional treatment ... [was] not a prescription within the meaning and intent of [S]ection [ ] 829 ..."). *Id.*

15. All prescriptions for controlled substances were required to be "dated as of, and signed on, the day when issued and [ ] bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a).

(Intentionally Left Blank)

## COUNT ONE

*Conspiracy to Unlawfully Distribute Controlled Substances* – 21 U.S.C. § 846

16. Paragraphs 1-15 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

17. From in or around May 2021, and continuing through in or around April 11, 2023, within the District of Columbia and elsewhere, the defendant,

**NDUBUISI JOSEPH OKAFOR, M.D.,**

and co-conspirators not indicted herein, who are known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together, and with other persons, to knowingly and intentionally distribute and dispense controlled substances, including oxycodone, a Schedule II controlled substance and promethazine with codeine, a Schedule V controlled substance, and other controlled substances, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

### Purpose of the Conspiracy

18. It was a purpose and object of the conspiracy for the conspirators, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by, among other things: (a) distributing controlled substances outside the usual course of professional practice and not for a legitimate medical purpose; (b) generating large profits from distributing the controlled substances; and (c) diverting the proceeds from distributing the controlled substances for their personal use and benefit.

5

## Manner and Means of the Conspiracy

The manner and means by which **OKAFOR**, along with his co-conspirators, known and unknown to the Grand Jury, sought to accomplish the purpose and object of the conspiracy included, among other things:

19. **OKAFOR** used his status as a licensed physician, his DEA Registration Number, and his medical practice, Okafor Medical Associates, to knowingly prescribe controlled substances, including oxycodone and promethazine with codeine, outside the usual course of professional practice and not for a legitimate medical purpose.

20. **OKAFOR's** prescribing practices demonstrated a gross lack of individualized care for his purported patients; the vast majority of the controlled substance prescriptions **OKAFOR** issued were for oxycodone and promethazine with codeine regardless of the patient's individual diagnosis and for periods of time that were inconsistent with accepted use.

21. **OKAFOR** obtained some of his purported patients from drug traffickers and others, including his co-conspirators.

22. **OKAFOR's** co-conspirators ordered prescriptions for controlled substances from **OKAFOR** or a representative at Okafor Medical Associates, by providing patient names, dates of birth, pharmacy addresses, and the type and quantity of the controlled substance. **OKAFOR** would create a prescription using the information provided by his co-conspirators in exchange for a cash payment.

23. **OKAFOR** also issued electronic prescriptions for controlled substances directly to pharmacies where his co-conspirators intended to pick up the prescribed controlled substances.

24. **OKAFOR** exchanged controlled substance prescriptions for cash knowing his co-conspirators would pick up and divert the controlled substances.

25. **OKAFOR**'s co-conspirators paid **OKAFOR** approximately $180 to $300 in exchange for each controlled substance prescription that he wrote for them.

26. **OKAFOR** knew, or had reason to know, certain patients to whom he wrote controlled substance prescriptions were not who they claimed to be; did not have a medical necessity for the controlled substance prescription; and were abusing or diverting the controlled substances.

27. **OKAFOR** prescribed numerous controlled substance prescriptions to his co-conspirators, in the names and addresses requested by his co-conspirators even when he knew such names or addresses were false.

28. **OKAFOR** issued controlled substance prescriptions to his co-conspirators across multiple States. **OKAFOR**'s co-conspirator, or a representative of the co-conspirator, would then travel to the pharmacy indicated on **OKAFOR**'s prescription and attempt to pick up the prescribed controlled substance. Indeed, it was part of the conspiracy that **OKAFOR** would issue controlled substance prescriptions to the same purported patient in multiple states under multiple addresses.

29. In some instances, when **OKAFOR**'s co-conspirator was unable to obtain a controlled substance at a particular pharmacy, **OKAFOR** would issue a new controlled substance prescription to a nearby pharmacy, where the co-conspirator was able to obtain the controlled substance.

30. When contacted about a prescription that he wrote for his co-conspirators, **OKAFOR** would claim the prescription was valid, even when he knew the patient's name or address was false, or that the prescription was premised on an invalid diagnosis or lack of medical necessity.

31. At times, **OKAFOR** falsified medical records to create the appearance that

prescriptions issued to his purported patients were issued in the usual course of professional practice and for a legitimate medical purpose.

33. **OKAFOR** maintained documentation of how much his co-conspirators owed him for writing medically unnecessary prescriptions for controlled substances.

33. **OKAFOR's** co-conspirators communicated with him, including through platforms such as WhatsApp, and other messaging applications.

## COUNT TWO

*Maintaining a Drug-Involved Premises and Aiding and Abetting –*
21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2

34. Paragraphs 1 through 15 and 18 through 33 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

35. From in or around May 2021, and continuing through in or around April 11, 2023, in the District of Columbia, the defendant,

**NDUBUISI JOSEPH OKAFOR, M.D.,**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did unlawfully and knowingly use and maintain a place known as Okafor Medical Associates, located at 7603 Georgia Avenue Northwest, Washington, D.C. 20012, for the purpose of distributing controlled substances, including oxycodone (Schedule II) and promethazine with codeine (Schedule V), and other controlled substances, outside the usual course of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

## COUNTS THREE – TWENTY-NINE

*Unlawful Distribution of Controlled Substances and Aiding and Abetting –*
21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2

36. Paragraphs 1 through 15 and 18 through 33 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

37. On or about the dates listed below, in the District of Columbia and elsewhere, the defendant,

**NDUBUISI JOSEPH OKAFOR, M.D.,**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally distribute and dispense controlled substances, outside the scope of professional practice and not for a legitimate medical purpose, as set forth below:

| Count | Approximate Date Prescription Written | "Patient's" Initials | Controlled Substance |
|---|---|---|---|
| 3 | July 12, 2022 | CS | Oxycodone |
| 4 | July 21, 2022 | CS | Oxycodone |
| 5 | November 14, 2022 | UC 2 | Oxycodone |
| 6 | November 14, 2022 | UC 3 | Oxycodone |
| 7 | November 30, 2022 | UC 2 | Oxycodone |
| 8 | November 30, 2022 | UC 3 | Oxycodone |
| 9 | June 30, 2022 | JV | Oxycodone |
| 10 | November 1, 2022 | JV | Oxycodone |
| 11 | November 16, 2022 | JV | Oxycodone |
| 12 | November 21, 2022 | AN | Promethazine with Codeine |
| 13 | November 21, 2022 | LN | Promethazine with Codeine |
| 14 | November 28, 2022 | KE | Oxycodone |
| 15 | November 30, 2022 | MW | Oxycodone |

| Count | Approximate Date Prescription Written | "Patient's" Initials | Controlled Substance |
|---|---|---|---|
| 16 | December 3, 2022 | RB | Oxycodone |
| 17 | December 3, 2022 | SS | Oxycodone |
| 18 | December 3, 2022 | KE | Oxycodone |
| 19 | December 3, 2022 | JG | Oxycodone |
| 20 | December 3, 2022 | CG | Oxycodone |
| 21 | February 2, 2023 | JD | Oxycodone |
| 22 | February 2, 2023 | OD | Oxycodone |
| 23 | January 31, 2023 | OD | Oxycodone |
| 24 | February 23, 2023 | RaD | Oxycodone |
| 25 | February 23, 2023 | RoD | Oxycodone |
| 26 | March 31, 2023 | MS | Oxycodone |
| 27 | March 31, 2023 | TW | Oxycodone |
| 28 | March 31, 2023 | KaE | Oxycodone |
| 29 | March 31, 2023 | AS | Oxycodone |

## FORFEITURE ALLEGATION

*Criminal Forfeiture* – 21 U.S.C § 853(a) and (p) and 28 U.S.C. § 2461(c)

38.     Pursuant to Title 21, United States Code, Section 853(a), the United States of America gives notice to the defendant that upon conviction of an offense in violation of Title 21, United States Code, Sections 841, 846, or 856 the following is subject to forfeiture:

a. All property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and

b. All property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including, but is not limited to, any DEA registration(s) for **NDUBUISI JOSEPH OKAFOR, M.D.**

## Money Judgment and Substitute Assets

39. The United States will seek the imposition of a money judgment against the defendant, **NDUBUISI JOSEPH OKAFOR, M.D.**, upon conviction.

40. **OKAFOR** is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p)(1) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment against the defendant, pursuant to Title 21, United States Code, Section 853(p)(2) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON.

*Edward R. Martin /no*
EDWARD R. MARTIN, JR.
Attorney of the United States in
and for the District of Columbia